## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**CLIVE MELHADO,**

       **Petitioner,**                **CASE NO. 2:04-cv-1146**
                                   **JUDGE FROST**
       **v.**                          **Magistrate Judge ABEL**

**WANZA JACKSON, Warden,**

       **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties.

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### I.  FACTS

This case involves the following facts, as summarized by the Tenth District Court of Appeals:

> Appellant was charged with the June 11, 2001 murder of Jerome Cunningham. Early on that day, Cunningham hosted an "after-hours" dice game in his apartment at 1943 1/2 Cleveland Avenue. Alcohol was being served at the game. According to witness Wendall Brown, appellant lost quite a bit of money during the dice game, and was inebriated by the game's conclusion. After the game broke up, appellant entered the kitchen of the apartment, along with Cunningham, Wendall Brown, and Mr. Brown's brother, Roderick Brown. According to Wendall Brown, when the foursome arrived in the kitchen, appellant left the premises for no more than 20 seconds,

returned to the kitchen and asked Cunningham for a loan. Mr. Brown testified that, without allowing Cunningham time in which to respond, appellant shot Cunningham at a range of three to four feet. Cunningham's resulting injuries proved fatal.

Wendall Brown did not actually see the murder weapon, but he heard the shot and saw Cunningham fall. He testified he is certain that appellant shot Cunningham. Upon seeing Cunningham fall to the floor, Wendall Brown ran out the door and into an alley. Within a few minutes he was apprehended and handcuffed by police. Wendall Brown told police he was not the shooter, but that the shooter was wearing an orange t-shirt. He further stated that the shooter, "shot my friend. And my brother is up in there." Later, after appellant was apprehended, Wendall Brown identified him as Cunningham's shooter.

Roderick Brown testified that he, his brother and Cunningham went into the kitchen area of Cunningham's apartment after the dice game broke up, and appellant went out onto the back porch. Roderick Brown saw appellant "shuffling" with his shirt while on the porch. Roderick Brown then saw appellant reenter the apartment, walk up to Cunningham and ask him for a loan. Before Cunningham could respond, according to Roderick Brown, appellant shot Cunningham from a distance of about four feet.

Like his brother, Roderick Brown did not actually see the gun, but he did see something shiny in appellant's hand. He testified it must have been a gun because Cunningham was shot. Roderick Brown fled out the bathroom window and onto the roof, and then jumped onto a nearby building. He returned to Cunningham's apartment a short while later, through the same window, after making sure appellant had not pursued him. Upon his reentry to the apartment, Roderick Brown found Faith Brown--Cunningham's girlfriend--crying over Cunningham. Roderick Brown identified appellant as the shooter within 30 minutes of appellant's capture, and testified at trial that he is "100 percent sure" that appellant shot Cunningham.

Faith Brown testified that she was in Cunningham's apartment when the dice game broke up. She remained in the gambling room, but could see Cunningham standing in the kitchen from her vantage point. She saw Cunningham when he was shot, but did not see the shooter. After running through the kitchen to the living room to look for a telephone, and then returning to the kitchen when she could not locate a phone, Faith Brown saw appellant leaning over Cunningham

2

with his hand in Cunningham's pocket. According to Faith Brown, appellant pointed his gun at her and twice told her to get back. She testified that the gun was long and silver. She identified the gun at trial. Faith saw Roderick Brown reenter the apartment through the bathroom window. When the police arrived, she identified appellant as wearing an orange t-shirt and blue jogging pants. She later identified appellant in a photo array as the man who waved the gun at her.

Columbus Police Detective Rob Warnick testified that, while on patrol in the early morning hours of June 11, 2001, he heard a gunshot while he was sitting in his cruiser. He proceeded to a nearby alley, wherein he nearly sideswiped a man who had to jump out of the way to avoid being hit by the cruiser. Detective Warnick then came upon and apprehended Wendall Brown. Brown told him that he was not the shooter and that the shooter was wearing blue and orange. Warnick broadcast the description and noted that the man he had almost hit with his car fit the description given by Wendall Brown. As Warnick proceeded up the alley with Wendall Brown, he came upon Officer David Myers, who was pursuing appellant. Appellant was wearing powder blue and bright orange clothing.

Warnick and Myers succeeded in apprehending and handcuffing appellant. When they rolled him over, appellant's pocket fell open and a wallet and loose cash were inside. According to police, it appeared as though the cash had been shoved into the pocket. It was later confirmed that the wallet contained Cunningham's identification. Officer Jason Arnold, who had responded to the shooting and who assisted in taking custody of appellant, testified that he found a large amount of cash and a wallet in appellant's pants pocket, and that the wallet contained Cunningham's identification. He further testified that, at the time he was apprehended, appellant was wearing blue and orange and was missing a shoe.

Officer Myers testified that he first saw appellant while handcuffing two males who had been stopped after police responded to Warnick's broadcast. Officer Myers saw appellant walking away from the area; when the officer tried to gain appellant's attention, he quickened his pace. Officer Myers chased appellant, who began running. Officer Myers yelled at appellant to stop, but appellant did not stop until Myers overtook him. Officer Myers testified that appellant's clothing matched Warnick's earlier description, and appellant was missing a shoe. Officer Myers' testimony corroborated that of the other officers

3

with respect to the cash and wallet found in appellant's pocket.

Columbus Police Officer Mark Fester testified that, upon responding to Detective Warnick's broadcast, he and his partner noticed a single shoe at the bottom of a stairway leading to Cunningham's apartment building. The stairs led them to an open door to the upper apartment. Inside they found Cunningham's body lying on the kitchen floor. Officer Fester's search for the murder weapon ultimately led him to a .45 caliber weapon on the roof of the building immediately to the South of Cunningham's apartment. This weapon was identified as State's Exhibit B-2a, the same weapon identified by Faith Brown. Fester also identified State's Exhibit B-4 as the shoe found at the bottom of the stairs.

Officer Fester's partner, Scott Leroy, testified about finding the single shoe and finding Cunningham. Officer Leroy later transported Roderick Brown to a nearby McDonald's restaurant, where Mr. Brown identified appellant as the shooter.

Crime Scene Detective Kevin Jackson testified that he confiscated various items of evidence from Cunningham's apartment, including the gun and Cunningham's wallet and identification.

Franklin County Forensic Pathologist Patrick Fardal testified that he performed an autopsy on Jerome Cunningham the same day he was killed. Fardal testified that Cunningham died as the result of a single .45 caliber gunshot wound to the left chest. The bullet lodged in Cunningham's back and was collected as evidence. The parties stipulated that the bullet was fired from the weapon taken from the roof of Cunningham's apartment and identified as State's Exhibit B-2a.

Exhibit E to Return of Writ.

## II. PROCEDURAL HISTORY

Petitioner was indicted by the May 45, 2001, term of the Franklin County grand jury on two counts of aggravated murder, in violation of O.R.C. §2903.01, and aggravated robbery, in violation of O.R.C. §2911.01, with specifications.  Exhibit A to Return of Writ.  While represented by

counsel, petitioner proceeded to jury trial, and on March 20, 2002, was found guilty of murder, aggravated murder,[1] and aggravated robbery, with specifications.  Petitioner was sentenced to life without parole with an additional three consecutive years of actual incarceration for use of a firearm, and eight years with an additional three consecutive years of actual incarceration for use of a firearm, such sentences to be served concurrently.  Exhibit B to Return of Writ.  Represented by new counsel, petitioner filed a timely appeal of his convictions to the Tenth District Court of Appeals. He asserted the following assignments of error:

> 1.  R.C. §2929.03(D) is violative of the 14th Amendment to the Constitution of the United States because it irrationally distinguishes between individuals to whom a jury has recommended a sentence of death and those to whom a jury has recommended a sentence of life imprisonment.

> 2. The trial court erred in overruling appellant's motion for acquittal pursuant to Ohio Crim. R. 29; appellant's convictions violate U.S. Const. Amend. VII and XIV and Ohio Const. Art. I, §§1, 2, and 16 because the convictions are against the manifest weight of the evidence.

> 3. The defendant was denied the effective assistance of counsel in violation of U.S. Const. Amend. 6.

Exhibit C to Return of Writ.  On September 9, 2003, the appellate court affirmed the judgment of the trial court.  Exhibit E to Return of Writ.  Still represented by counsel, petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court in which he raised the same propositions of law.  Exhibit F to Return of Writ.  On December 24, 2003, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial

---

[1] Petitioner's convictions on murder and aggravated murder were merged at sentencing. *See* Exhibit B to Return of Writ.

5

constitutional question.  Exhibit H to Return of Writ.

On November 29, 2004, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1.  Ohio Revised Code §2929.03(D)(3) is violative of the 14th Amendment to the Constitution of the United States because it irrationally distinguishes between individuals to whom a jury has recommended a sentence of death and those to whom a jury has recommended a sentence of life imprisonment.

> 2. The trial court erred in overruling appellant's motion for acquittal pursuant to Ohio Criminal Rule 29.  Appellant's convictions violate United States Const. Amend. VII and XIV and Ohio Const. Article I, §§2, 9, and 16 because the convictions are against the manifest weight of the evidence.

> 3. The defendant was denied the effective assistance of counsel when counsel's performance was deficient and such deficiency prejudiced the defense so as to deprive the defendant of a fair trial.

It is the position of the respondent that all of these claims are without merit.

### III.  CLAIM ONE

In his first claim for relief, petitioner asserts that Ohio Revised Code Section 2929.03(D) is unconstitutional.  Petitioner asserts that

> pursuant to Ohio Revised Code 2929.03(D), when a jury recommends a sentence of death, the trial court may exercise its discretion and instead sentence the defendant to any of the life imprisonment terms; however, when discretion is taken away by this statute, and the court must sentence the defendant to the jury's recommendation, this is disparate treatment of similarly situated defendants, *i.e.,* those convicted of aggravated murder with death specifications, and is violative of the equal protection of the law under both the Ohio and

United States Constitutions.

This claim fails to present a claim appropriate for federal habeas corpus review. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Petitioner's allegations in claim four address a collateral matter that is unrelated to his detention. *Kirby v. Dutton*, 794 F.2d 245 (6th Cir. 1986).

## IV. CLAIM TWO

In claim two, petitioner asserts that there is constitutionally insufficient evidence to sustain his convictions, and that his convictions are against the manifest weight of the evidence.

The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without enough proof to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find teach element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses. *Jackson*, 443 U.S. at 319; *Walker*, 703 F.2d at 969.

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence – as opposed to one based upon insufficient evidence – requires the appellate court to act

7

as a "thirteenth juror" and review the entire record, weight the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his conviction was against the manifest weight of the evidence cannot be considered by this Court.

As to petitioner's assertion that the evidence is constitutionally insufficient to sustain his convictions, before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia, supra*, 443 U.S. ta 319. To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992)(citing *Jackson*, at 319.) The prosecution is not affirmatively required to "rule out every hypothesis except that of guilty." *Id.* (quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume - even if it does not appear on the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (quoting *Jackson,* at 326).

Petitioner was convicted of the aggravated murder of Jerome Cunningham pursuant to O.R.C. §2903.01, which provides:

> (A) No person shall purposely, and with prior calculation and design, cause the death of another.

(B) No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.

(C) Whoever violates this section is guilty of aggravated murder, and shall be punished as provided in section 2929.02 of the Revised Code.

(D) No person shall be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another. In no case shall a jury in an aggravated murder case be instructed in such a manner that it may believe that a person who commits or attempts to commit any offense listed in division (B) of this section is to be conclusively inferred, because he engaged in a common design with others to commit the offense by force and violence or because the offense and the manner of its commission would be likely to produce death, to have intended to cause the death of any person who is killed during the commission of, attempt to commit, or flight from the commission of or attempt to commit, the offense. If a jury in an aggravated murder case is instructed that a person who commits or attempts to commit any offense listed in division (B) of this section may be inferred, because he engaged in a common design with others to commit the offense by force or violence or because the offense and the manner of its commission would be likely to produce death, to have intended to cause the death of any person who is killed during the commission of, attempt to commit, or flight from the commission of or attempt to commit the offense, the jury also shall be instructed that the inference is nonconclusive, that the inference may be considered in determining intent, that it is to consider all evidence introduced by the prosecution to indicate the person's intent and by the person to indicate his lack of intent in determining whether the person specifically intended to cause the death of the person killed, and that the prosecution must prove the specific intent of the person to have caused the death by proof beyond a reasonable doubt.

Petitioner was also convicted of aggravated robbery of Jerome Cunningham, pursuant to O.R.C. §2911.01, which provides:

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing

9

immediately after such attempt or offense, shall do either of the following:

(1) Have a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control;

(2) Inflict, or attempt to inflict serious physical harm on another.

(B) Whoever violates this section is guilty of aggravated robbery, an aggravated felony of the first degree.

Additionally, petitioner was convicted of the murder of Jerome Cunningham, pursuant to O.R.C. §2903.02, which provides:

(A) No person shall purposely cause the death of another.

(B) Whoever violates this section is guilty of murder, and shall be punished as provided in section 2929.02 of the Revised Code.[2]

Petitioner was also convicted on the firearm specifications. *See* O.R.C. §2941.145.

The state appellate court concluded that the evidence was constitutionally sufficient to sustain these convictions as follows:

In his second assignment of error, appellant argues that the trial court erred in overruling his motion for acquittal pursuant to Crim.R. 29, because the evidence was legally insufficient to sustain his convictions, and that his convictions are unconstitutional because they are against the manifest weight of the evidence.

The Supreme Court of Ohio outlined the role of an appellate court presented with a sufficiency of evidence argument in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus:

An appellate court's function when reviewing the sufficiency of the

---

[2] As previously indicated, petitioner's convictions on murder and aggravated murder were merged at sentencing.

10

evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime proven beyond a reasonable doubt. * * * *See, also*, *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.

This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Rather, the sufficiency of evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. *State v. Thomas* (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356.

***

First, appellant argues that certain aspects of the testimony of witnesses Wendall and Roderick Brown, Faith Brown and Detective Warnick contain inconsistencies; that, the Brown brothers' drinking and Faith Brown's emotional state at the time she was initially questioned render the evidence insufficient to sustain his convictions. We disagree.

Two eyewitnesses saw appellant ask the victim for money and immediately thereafter saw the victim fall from a single gunshot wound. Though neither witness actually saw the gun when the shot was fired, both testified that they were certain that appellant was the shooter. The clothing worn by appellant on the night of the murder matched the description of the shooter's clothing given by all three eyewitnesses. Immediately after the victim was shot, Faith Brown saw appellant holding a gun, leaning over the victim and putting his hand in the victim's pocket. Faith Brown identified the gun recovered by police as the same gun she saw in appellant's hand as he leaned over the victim and shouted at her to get back. A wallet containing the victim's identification and loose cash was found on appellant's person when he was arrested by police. Appellant fled when the police attempted to gain his attention during their initial response to the scene. Appellant was wearing only one shoe when he was apprehended; the police found a single shoe at the bottom of the stairs

11

> leading up to the victim's apartment. We conclude that evidence was not lacking on any essential element of the crimes of aggravated murder and aggravated robbery. The jury did not lose its way in finding that the weight of the evidence supported appellant's convictions. Appellant's second assignment of error is overruled.

Exhibit E to Return of Writ.

Petitioner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir.1997). Under 28 U.S.C. §2254(e)(1), the state court's factual findings are entitled to a presumption of correctness:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id*. Additionally, the state court's decision is binding on this Court unless that decision is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

Under the "contrary to" clause, a federal habeas court may grant the

12

> writ if the state court arrives at a conclusion opposite to that reached
> by [the United States Supreme Court] on a question of law or if the
> state court decides a case differently than [the United States Supreme
> Court] has on a set of materially indistinguishable facts. Under the
> "unreasonable application" clause, a federal habeas court may grant
> the writ if the state court identifies the correct governing legal
> principle from [the United States Supreme] Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Petitioner has failed to meet this standard here.

Petitioner does not dispute the factual findings of the state appellate court, but argues, as he did in the state appellate court, that testimony of witnesses was inconsistent and incredible. However, upon review of the record, and for the reasons discussed by the state appellate court, this Court likewise concludes that, when viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, the evidence is constitutionally sufficient to sustain petitioner's convictions.

Claim two is without merit.

## V.  CLAIM THREE

In claim three, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to raise the defense of voluntary intoxication, failed to present exculpatory witnesses, failed to request a jury instruction on missing witnesses, failed to permit petitioner to testify at trial, failed to properly cross-examine the medical examiner regarding blood spatter and police detectives regarding gunshot residue tests, failed file appropriate pre-trial motions, and because trial counsel failed to permit petitioner to waive his right to a jury trial and be tried by a three-judge panel.

The state appellate court rejected this claim as follows:

> In his third assignment of error, appellant argues that he was denied

13

the effective assistance of counsel because: (1) counsel failed to "exploit the defense of intoxication to negate the *mens rea* element of the crimes charged"; (2) counsel failed to interview other persons who were present at the scene of the shooting but who were not called as witnesses for the state; (3) counsel failed to request a missing witness charge; (4) counsel rebuffed appellant's requests to waive his right to a trial by jury, and to testify in his own behalf; and (5) counsel failed to properly cross-examine the medical examiner and the Crime Scene Search Unit detective regarding wound and blood evidence and a negative residue test supposedly performed on appellant shortly after he was taken into custody.

In order to demonstrate that his counsel's representation was ineffective, appellant must demonstrate that: (1) counsel's performance was deficient; and (2) this deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

"A defendant does not state a claim for ineffective assistance of counsel unless his attorney acted unreasonably given the facts of the case, and the unreasonable conduct was prejudicial to the defense." *State v. Mills* (1992), 62 Ohio St.3d 357, 370, 582 N.E.2d 972, *certiorari denied, Mills v. Ohio* (1992), 505 U.S. 1227, 112 S.Ct. 3048, 120 L.Ed.2d 915. Counsel need not raise meritless issues. *State v. Hill* (1996), 75 Ohio St.3d 195, 661 N.E.2d 1068. A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *Strickland,* at 697.

Appellant claims his counsel should have explored the use of voluntary intoxication as a means to negate the mental state required for the crimes with which he was charged. However, voluntary intoxication may no longer be taken into account in determining the existence of a mental state that is an element of a criminal offense. In the year 2000, the General Assembly amended R.C. 2901.21. That statute now provides that voluntary intoxication may only be taken into consideration with respect to whether the person charged was *physically* capable of performing the act with which he is charged. R.C. 2901.21(C). In this case, the record does not support the conclusion that appellant's voluntary intoxication was relevant to the issue of his physical capability to shoot Cunningham. Accordingly,

14

appellant's counsel was not ineffective for failing to pursue this avenue of defense.

With respect to appellant's claim that his trial counsel should have interviewed potential witnesses who were not called as witnesses by the state, appellant argues that "there is no indication that counsel sought to interview these witnesses, nor was investigation done to determine whether their testimony might have been cumulative or shed additional light upon the circumstances surrounding the shooting." (Appellant's brief, at 28.) However, the record is insufficient to negate the presumption that counsel acted competently.

Furthermore, counsel's billing records reflect that counsel engaged the services of an investigator who billed counsel for efforts to locate and interview several witnesses not called by the state. There exist numerous possible strategic reasons for counsel's decision not to subpoena these individuals for trial, and counsel could have been acting in appellant's best interest in choosing to proceed in this manner. Appellant has failed to demonstrate, and the record fails to support, the conclusion that appellant suffered actual prejudice as a result of counsel's failure to present the testimony of certain, unidentified witnesses. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965 ("Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel").

With respect to appellant's contention that counsel should have requested a missing witness instruction to the jury, the two requirements which must be met for a missing witness instruction are as follows: the witness in question must be within the particular power of a party to produce and the testimony of that witness would elucidate the transaction. *State v. Long* (Sept. 27, 1984), Franklin App. No. 83AP-444. If the testimony of the missing witnesses would have been merely cumulative to the officers on the scene, then it would not naturally be produced by the state, and the requested instruction would not be appropriate. *Silveous v. Rensch* (1969), 20 Ohio St.2d 82, 253 N.E.2d 758. There is no evidence in the record that the witnesses appellant claims were "missing" were within the particular power of the state to produce, that their testimony would

15

elucidate the transaction or that their testimony would not be merely cumulative to testimony of the officers and other witnesses. Accordingly, counsel was not ineffective in failing to request a missing witness instruction.

Appellant next argues that his counsel was ineffective because they did not afford appellant a meaningful opportunity to participate in his own defense. Specifically, appellant argues that he expressed his desire to waive his right to a trial by jury, and to testify in his own behalf, but that counsel refused to allow him to take either action. The record reflects that the first time appellant raised these issues was during his unsworn statement to the trial judge at sentencing, when he stated he had been "willing" to testify but his counsel "didn't let [him] take the stand." He further stated during his allocution that his counsel, "waived [his] rights" to a three-judge panel.

We note initially that appellant brought these matters to the attention of the trial court far too late in the process for the court to be able to assist him in resolving these alleged strategic disagreements with trial counsel. The fact that appellant unduly delayed raising these concerns imbues them with a sense of self-serving artifice. Moreover, the record is insufficient to demonstrate that counsel acted incompetently in trying this case to a jury or in failing to call appellant to the witness stand. The record also fails to reveal that actual prejudice resulted from these decisions. Accordingly, we find no ineffective assistance with respect to them.

Appellant also claims his counsel was ineffective in the cross-examinations of the medical examiner and the crime scene detective. Appellant argues that his trial counsel should have questioned the medical examiner, Dr. Fardal, about the distance between the muzzle of the murder weapon and the victim, in order to "contradict the testimony of the eye witnesses as to the relative positions of the shooter and victim." (Appellant's brief, at 30.) However, the record reveals that appellant's counsel did cross-examine Dr. Fardal about the absence of soot and stippling on the victim. Dr. Fardal testified on cross-examination that the absence of soot indicates the weapon was greater than six inches from the victim when it was fired; he testified that the absence of stippling indicates the weapon was greater than three feet from the victim when it was fired. In any case, there is no indication in the record that the "relative positions of the shooter and victim" was a fact at issue or was pivotal to the outcome of appellant's trial. We therefore find no ineffectiveness in counsel's cross-examination of Dr. Fardal with respect to gun-to-victim distance.

16

Appellant also attempts to impugn trial counsel's cross-examination of Dr. Fardal because counsel failed to explore the presence or absence of bloodstains or spatters on appellant's or the victim's clothing, and the absence of an exit wound. Trial counsel's failure to explore the presence or absence of bloodstains and the absence of an exit wound can be attributed to counsel's theory of the case and tactical decision-making (which, though professionally reasonable, might be different from a theory that other defense attorneys might have developed, or decisions other counsel might have made). We will not second-guess trial strategy, especially when the record provides no basis for us to conclude that further cross-examination of Dr. Fardal would have revealed any facts which would have changed the outcome of the trial, or would even have been favorable to appellant. *See State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523 and *State v. Covington,* Franklin App. No. 02AP-245, 2002-Ohio-7037. Appellant fails to persuade us that, based upon the record, the failure to explore these questions on cross-examination constitutes incompetence on the part of his trial counsel.

Appellant also claims ineffective assistance in the cross-examination of Detective Jackson, of the Columbus Police Crime Scene Search Unit. Appellant contends his trial counsel should have questioned Detective Jackson regarding a negative gunpowder residue test appellant says was performed on him shortly after he was taken into custody. This contention is at odds with appellant's statement during his allocution, in which he stated that he was not sure of the results of the test. It is also inconsistent with the filing of a motion to suppress these test results filed December 11, 2001, on behalf of appellant. Without evidence in the record to support such a conclusion, we cannot say that the failure to cross-examine Detective Jackson about the results of gunpowder residue testing fell to the level of ineffective assistance; in fact, it is just as likely that this failure was an astutely calculated decision on the part of trial counsel. An appellate court reviewing an ineffective assistance of counsel claim usually will not second-guess counsel's strategy in direct and cross-examination of witnesses (*State v. Thacker,* Franklin App. No. 02AP-113, 2002-Ohio-5571*; State v. Poole,* Cuyahoga App. No. 80150, 2002-Ohio-5065 ) and we decline to do so here. For all of the foregoing reasons, we conclude that appellant's trial counsel was not ineffective and thus, appellant's third assignment of error is overruled.

Exhibit E to Return of Writ. Again, the decision of the state appellate court is entitled to a

17

presumption of correctness, 28 U.S.C. §2254(d), (e), and petitioner has failed to establish that the state court's decision is so unreasonable as to justify federal habeas corpus relief. *See Williams v. Taylor, supra.*

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might e considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*, at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

Petitioner has failed to identify any witnesses that could have provided exculpatory

testimony at trial.  He fails to provide any specificity regarding what further investigation counsel

could have undertaken, but did not, that adversely affected the defense.  As discussed by the state

appellate court, the defense of voluntary intoxication would not have assisted petitioner's defense

under Ohio law in view of the circumstances of this case.  O.R.C. §2901.21(C) provides:

> (C) Voluntary intoxication may not be taken into consideration in
> determining the existence of a mental state that is an element of a
> criminal offense. Voluntary intoxication does not relieve a person of
> a duty to act if failure to act constitutes a criminal offense. Evidence
> that a person was voluntarily intoxicated may be admissible to show
> whether or not the person was physically capable of performing the
> act with which the person is charged.

Similarly, as discussed by the state appellate court, counsel's performance was not unreasonable

under *Strickland* for failing to request a jury instruction on missing witnesses.  "[A]n adverse

inference may arise where a party fails, without satisfactory explanation, to call a witness where the

existence of the witness is known to and is in the control of the litigant whose interest would

naturally be served by his production."  *Silveous v. Rensch, supra,* 20 Ohio St.2d at 84.  However,

"[i]f there is adequate relevant evidence on a particular issue, any additional evidence on that issue

complained of as being absent is only cumulative..... To allow an unfavorable inference to be drawn

from the nonproductivity of such evidence would serve to emasculate the historical basis for

allowing the instruction."  *Id.*  The record in this case fails to reflect that such a jury instruction

would have been appropriate.  Additionally, petitioner fails to identify witnesses that should have

been called by the prosecution, but were not, whose absence would have permitted a jury instruction

on missing witnesses.  *See id.*

    This Court agrees with the conclusion of the state appellate court, that petitioner has failed

to establish the ineffective assistance of counsel due to his attorney's refusal to permit him to waive

his right to a jury trial, or to testify on his own behalf. Aside from petitioner's allegation here, nothing in the record supports his claim that trial counsel refused to permit him to waive his right to a jury trial, or that petitioner was prejudiced by proceeding to jury trial, rather than trial to the court. Further, counsel's advice regarding whether or not to proceed to jury trial would have been a matter of trial strategy, and nothing in the record reflects that counsel's advice was unreasonable in this respect. *See Milone v. Camp*, 22 F.3d 693, 705 (7th Cir. 1994)(Advice to waive jury trial constitutes a reasonable trial strategy.)

> The right to testify... on one's own behalf at a criminal trial... is one of the rights "that are essential to due process of law in a fair adversary process."

*Rock v. Arkansas*, 483 U.S. 44, 51 (1987), quoting *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975). The right is one of constitutional dimension, and "is subject only to a knowing and voluntary waiver by the defendant." *United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000)(citations omitted).

> Although the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed. *Joelson*, 7 F.3d at 177. This is so because the defendant's attorney is presumed to follow the professional rules of conduct and is "strongly presumed to have rendered adequate assistance" in carrying out the general duty "to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland v. Washington*, 466 U.S. 668, 688-90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)...
>
> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. *Joelson*, 7 F.3d at 177. At base, a defendant must "alert the trial court" that he desires to testify or that

> there is a disagreement with defense counsel regarding whether he
> should take the stand.  *Pelzer,* 1997 WL 12125 at *2.  When a
> defendant does not alert the trial court of a disagreement, waiver of
> the right to testify may be inferred from the defendant's conduct.
> Waiver is presumed from the defendant's failure to testify or notify
> the trial court of the desire to do so.  *Joelson*, 7 F.3d at 177.

*United States v. Webber, supra*, 208 F.3d at 551.  Petitioner does not dispute the factual findings of the state appellate court, which indicate that petitioner did not alert the trial court at any time during his trial that he wanted to testify on his own behalf, and failed to raise such issue until sentencing.[3] Therefore, petitioner's waiver of his right to testify may be presumed.

Finally, upon review of the record and for the reasons discussed by the state appellate court, this Court likewise concludes that petitioner has failed to establish that his attorney's performance was unreasonable during the cross-examination of prosecution witnesses.  Nothing in the record supports petitioner's allegation that gunshot residue tests would have assisted in petitioner's defense.

## VI.

Based upon all of the foregoing, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper

---

[3] Trial and sentencing transcripts are not a part of the record before this Court.

21

objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

s/Mark R. Abel
United States Magistrate Judge

22